# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELLIOTT INDUSTRIES,
LIMITED PARTNERSHIP,
a New Mexico limited partnership,

      Plaintiff,

vs.                                                               CIV No. 00-655 JC/WWD

CONOCO INC., a Delaware corporation;
AMOCO PRODUCTION COMPANY,
a Delaware corporation; and AMOCO
ENERGY TRADING CORP., a
Delaware corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court on Defendants' Joint Motion for Partial Summary Judgment on Statutory Claims (Dfs' Motion), filed April 9, 2002 (*Doc. 274*). Upon reviewing the motion, the memoranda, and all relevant authorities, the Court finds the motion not well taken, and it is thus denied.

### I.     Background

      Plaintiff, Elliott Industries, as representative of its Class, which this Court certified on September 9, 2001, is suing Defendants alleging that they concealed from their royalty owners a 39% fee for gas processing services at the New Blanco Plant in the San Juan Basin, New Mexico. Defendants do not challenge Plaintiff's contention that they made deductions from the Class's royalty

payments. *See e.g.* Class's Response Brief in Opposition to Defendants' Joint Motion for Partial Summary Judgment on Statutory Claims (Class's Response), filed April 26, 2002, Exhibit A:49,132 (*Doc. 294*). Instead, Plaintiff's allegations surround whether Defendants deceptively underpaid royalty payments due them by not including the deductions in the royalty owners' statements.

As part of this suit, Plaintiff is suing Defendants under New Mexico Unfair Trade Practices Act ("UPA"), 1978 N.M.S.A. §§ 57-12-1 *et seq.*, and the Oil and Gas Proceeds Payment Act, 1978 N.M.S.A. §§ 70-10-1 *et seq.* As shall be set forth below, Defendants argue that Plaintiff has improperly invoked both statutes and, consequently, both should be dismissed on summary judgment. The Court, however, does not find Defendants' arguments persuasive.

## II.     Standard of Review

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *See id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *See*

*Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *See Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *See Anderson*, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *See id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *See Matsushita*, 475 U.S. at 597.

**III.     Discussion**

    **A.**     Unfair Trade Practices Act

Plaintiff contends that its claim falls under the UPA, as the Class is an involuntary purchaser of Defendants' 39% processing fee. *See* Class's Response at 15. Defendants challenge Plaintiff's statement of the case, for they claim that the issue solely concerns the alleged underpayment of royalties on natural gas and natural gas liquids. *See* Defendants' Brief in Support of Joint Motion for Partial Summary Judgment on Statutory Claims, 2 (Dfs' Brief), filed as an exhibit to Dfs' Motion, filed April 9, 2002 (*Doc. 274*). Defendants also challenge Plaintiff's choice of statute, claiming that the New Mexico legislature solely designed the UPA for transactions involving the purchase of goods or services by consumers, and a processing fee is neither a good nor a service. *See id.* at 5.

The UPA specifically states that "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." § 57-12-3. Under this statute, "'trade' or 'commerce' includes the advertising, offering for sale, sale or distribution of any services and any property and any other article, commodity or thing of value...directly or indirectly affecting the people of this state." § 57-12-2(C).

Unfair or deceptive trade practice "means any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services...by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person...." *See* § 57-12-2(D).[1] Such deceptive trade practices include "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive...."§ 57-12-2(D)(14). Similarly, the UPA characterizes an unconscionable trade practice as:

> "any act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan of any goods or services...which to a person's detriment:
> (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or
> (2) results in a gross disparity between the value received by a person and the price paid.

§ 57-12-2(E). Persons under the UPA are "natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates." § 57-12-2(A).

Defendants' first contention claims that Plaintiff cannot state a claim for relief under the UPA, for the Class is not a consumer. *See* Dfs' Brief at 7. Yet, this argument is inapposite, for the UPA uses the term "person" throughout, and Plaintiff clearly meets this definition, as the Class is made up of businesses and natural persons. *See* Class's Response at 11.

---

[1] In accordance with the UPA, courts have set out the necessary elements that Plaintiffs must demonstrate in order to meet the requirements of the Act. The elements are: "(1) the defendants made an oral or written statement that was false or misleading; (2) the false or misleading statement was knowingly made in connection with the sale, lease, rental or loan of goods or services; (3) the representation occurred in the regular course of the representor's trade or commerce; and (4) the representation may, tends to, or does deceive or mislead any person." *Taylor v. United Management, Inc.,* 51 F.Supp. 2d 1212, 1216 (D.N.M. 1999); *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (N.M. 1991).

Defendants next contend that Plaintiff's claim fails under the UPA, as there are no goods or services at issue about which Defendants could have "knowingly made a false or misleading statement in connection with the sale... of goods or services." *See* Dfs' Brief at 7; Defendants' Reply in Support of Joint Motion for Partial Summary Judgment on Statutory Claims (Dfs' Reply), filed May 17, 2002, 7 (*Doc. 333*). They cite to various cases in support of their contention that royalty owners are neither sellers nor purchasers of royalty gas. *See* Dfs' Brief at 11-12 (citing *Burnet v. Harmel*, 287 U.S. 103, 107 (1932); *Mobil Oil Corp. v. FPC*, 463 F.2d 256 (D.C. Cir. 1971); *Jicarilla Apache Tribe v. Fed. Energy Regulatory Comm'n*, 578 F.2d 289 (10th Cir. 1978)). Plaintiff, however, argues that the Class is suing as an involuntary purchaser of gas processing services. *See* Class's Response at 16. In support of this contention, Plaintiff cites to various instances where Defendants refer to gas processing fees as they seem to relate to services. *See e.g.* Class's Response, Exhibit A:49:10-13; 262:1-16 ("If we had room to print the entire name of the deduction description, it would read 'treating compression processing and other.'")

The Court concedes that this argument is tenuous at best and greatly stretches the boundaries of the law. Defendants, however, fail to provide any facts countering Plaintiff's assertion besides the claim that the Class is not involved in the market of buying and selling processing services. *See* Dfs' Reply at 5-6. Defendants argue that post-production costs should not be considered services purchased by Plaintiff. *See id*. Although there is support for this argument, the Court does not have sufficient evidence to determine at what stage the processing fees occurred. *See Piney Woods Country Life Sch. v. Shell Oil Company*, 726 F.2d 225, 240 (5th Cir. 1984)(holding that post-production costs may be deducted from royalty interests computed at the well.); *but see West v. Alpar Resources, Inc.,* 298 N.W.2d 484, 490 (N.D. 1980)(citations omitted)("It is not possible to state in

broad general form what items of expense, if any, a lessee, or lease operator, will be entitled to deduct in computing and paying royalty...to which the lessor or his successor in interest is entitled. The question in any case must be determined with reference to the terms and provisions of the given lease, the nature of the claimed deductible items, and the precise character of the royalty...rendered.").

Moreover, as the New Mexico Court of Appeals held, "[b]ecause the Unfair Practices Act constitutes remedial legislation, [courts] interpret the provisions of this Act liberally to facilitate and accomplish its purposes and intent." *State ex rel. Stratton v. Gurley Motor Co.,* 105 N.M. 803, 808, 737 P.2d 1180, 1185 (N.M. Ct. App. 1987)(citation omitted). Due to the lack of relevant case law and evidence before the Court regarding whether a processing fee is a service under the UPA, this Court finds that there is a dispute as to the facts surrounding the processing services and their impact, if any, on the royalties of the Class members.

**B.** Oil and Gas Proceeds Payment Act

"The oil and gas proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in New Mexico shall be paid to all persons legally entitled to such payments...." 1978 N.M.S.A.§ 70-10-3.

Defendants claim that the sole intent of this statute is to "ensure that the appropriate *individuals* are paid their royalty interests, not to determine what deductions from the royalty might be proper." *See* Dfs' Brief at 13. This time it is Defendants who are attempting to be creative in their interpretation of the statute. Yet, their argument on its face fails, for there is nothing in the statute itself or in the case law that supports such an assertion.[2] First, the statute's title, "Oil and Gas

---

[2] The Court notes that this statute has only been cited in one case. *See J.L. Murdock v. Pure-Lively Energy*, 108 N.M. 575, 580, 757 P.2d 1292, 1297 (1989). Yet, the citation solely refers to the statute's Application section, which states that the interest allowed for late payments of proceeds is excused if the payor has a good faith

Proceeds Payments Act," indicates that it concerns all issues relating to the payment of oil and gas proceeds. Moreover, there is nothing in the definition section of the statute nor in any other section suggesting such a narrow reading. Proper payment of royalties necessarily entails ensuring that the appropriate lessors are paid. Yet, such assurance, in turn, cannot be to the exclusion of that which is included in, or deducted from, the payments.

Second, the Act defines oil and gas proceeds as:

> all payments derived from oil and gas production from any well located in New Mexico, whether royalty interest, overriding royalty interest, production payment interest or working interest, expressed as a right to a specified interest in the cash proceeds received from the sale of oil and gas produced thereunder or the cash value thereof, subject to all taxes withheld therefrom pursuant to law, but excluding "net profits interests," and other types of interest the extent of which cannot be determined with reference to a specified share of such proceeds...

§70-10-2(B). Defendants argue that proceeds, as that term is used in the Act, do not include processing fees. *See* Dfs' Brief at 15. Yet, other than mere conjecture on Defendants' part, neither the Act nor any relevant case law supports this supposition. The statute clearly states that it concerns "all payments" and only excludes taxes and "net profits interests."[3]

Furthermore, as Defendants state, producers may be entitled to deduct a reasonable processing fee from the royalties they must pay. *See* Dfs' Brief at 15 (stating that "oil and gas producers are entitled to deduct a reasonable processing fee from the royalties they must pay. (citing *Cresson v. Amoco Prod. Co.,* 129 N.M. 529, 534, 10 P.3d 853, 858 (lessors may deduct fees for post-production costs); *Hurienko v. Chevron, USA, Inc.*, 69 F.3d 283 (8th Cir. 1995); *Piney Woods*

---

belief that the payee does not hold good and marketable title to his royalty interest. *See* § 70-10-5.

[3] Defendants allege that certain class members' interests are "net profits interest," yet admit that they do not know the exact number, nor do they provide the Court with any evidence supporting their allegation.

*Country Life Sch. v. Shell Oil Co.,* 726 F.2d 225 (5th Cir. 1984); *Judice v. Mewbourne Oil Co.,* 939 S.W.2d 133 (Tex. 1996)). The Court finds that because a royalty interest is deemed a proceed under the Act, and producers generally have a right to deduct a reasonable fee therefrom, the Act, therefore, necessarily encompasses processing fees.

Finally, Defendants allege that the Act is inapplicable, as the majority of Class members receive less than $100.00 in net royalties at the end of any month. *See* Dfs' Brief at 17. This argument stems from the Act's penalty provision, which excludes penalty payments if "the total amount of oil and gas proceeds in the possession of the payor owed to the owner of the oil and gas proceeds making claim to payment is less than one hundred dollars ($100) at the end of any month." § 70-10-5(C). In response, Plaintiff argues that Defendants' citation to two months (September 1997 and October 2000) in which allegedly 70% of class members received less than the requisite amount is not representative of the entire time frame. *See* Class's Response at 21.

In a related argument, Defendants interpret this section to mean that if a payee's royalty on any given month is less than $100, he is ineligible to claim a penalty. Plaintiff, however, seems to argue that the penalty provision is only triggered if the "amount of illegal processing fees *kept and retained* for processing services...by Defendants" falls below $100. *See* Class's Response at 21. Neither side cites to any relevant facts or case law, as there is none, to support their assertions.

Plaintiff next contends that it is unable to determine the exact payments, as Defendants have prevented access to the relevant information, and as such, there is a dispute regarding whether any Class members received less than $100 in net royalties at the end of any given month. *See* Class's Response at 20-21. Finally, Plaintiff argues that the Court, in its Class Certification order, allowed them to aggregate their damages, as they have "demonstrated a single title or right" in which they

have a "common and undivided interest because [they] hold common and undivided interests in the properties, leases and units producing gas...." *See* Class's Response at 22.

Due to the discrepancy in interpretation, lack of case law, and lack of evidence, this Court finds that there is a genuine issue in dispute negating summary judgment.

**IV.	Conclusion**

To successfully assert the Unfair Practices Act, Plaintiff must demonstrate four elements. Yet, in this motion the only two at issue were whether Plaintiff is a "person" and whether there was a sale of goods or services. Due to the UPA's language, Plaintiff is obviously a person, so the more difficult question concerned the latter definition. Plaintiff's creative argument, although tenuously remaining within the boundaries of the law, swayed the Court that there is a material issue regarding whether a processing fee is a service that Plaintiffs unknowingly had to pay.

Plaintiff's claim under the Oil and Gas Proceeds Payments Act also survives summary judgment due to the lack of statutory interpretation, case law and evidence.

Wherefore,

IT IS ORDERED that Defendants' Joint Motion for Partial Summary Judgment on Statutory Claims, filed April 9, 2002 (*Doc. 274*) is DENIED.

Dated July 1, 2002.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:

    John M. Eaves, Esq.
    Paul Bardacke, Esq.
    Derek V. Larson, Esq.
    Kerry C. Kiernan, Esq.
    EAVES, BARDACKE, BAUGH,
    KIERST & KIERNAN
    Albuquerque, New Mexico

and

    Mary E. Walta, Esq.
    WHITE, KOCH, KELLY
    & MCCARTHY
    Santa Fe, New Mexico

Attorneys for Defendants:
Amoco:

    Scott S. Barker, Esq.
    Perry L. Glantz, Esq.
    HOLLAND & HART, LLP
    Greenwood Village, Colorado

    Marte D. Lightstone, Esq.
    MILLER, STRATVERT & TORGERSON, P.A.
    Albuquerque, New Mexico

Conoco:

    Michael B. Campbell, Esq.
    Robert J. Sutphin, Jr. Esq.
    HOLLAND & HART LLP
    Greenwood Village, Colorado