IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELLIOTT INDUSTRIES LIMITED
PARTNERSHIP**, a New Mexico limited
partnership, on behalf of itself and all
others similarly situated[1],

        **Plaintiffs,**

v.                                                            CIV No. 00-655 LH/WDS  ACE

**CONOCO, INC**., **a Delaware corporation,
BP AMERICA PRODUCTION COMPANY,**
a Delaware corporation, and, **BP ENERGY
COMPANY,** a Delaware corporation,

        **Defendants.**

## MEMORANDUM OPINION AND ORDER #1

**THIS MATTER** comes before the Court for consideration of these motions: Defendants' Joint Motion for Summary Judgment on "At the Well" Royalty Obligations (Docket No. 422); Conoco's Motion for Summary Judgment on the "Same as Fed" Royalty Obligation and Compliance

---

[1] This lawsuit was originally filed by Elliott Industries Limited Partnership. Class certification was subsequently granted, resulting in Elliott acting in a representative capacity. Additionally, this lawsuit was originally filed against Amoco Energy Trading Corporation. The caption was subsequently amended as to both of these named parties by Court order, following the filing of an unopposed motion by Plaintiffs to reflect a change in Plaintiffs' status and the fact that BP Production Company and BP Energy Company are successors in interest to the previously named Defendant.

Therewith (Docket No. 424)[2]; and, The Class's Motion for Leave to File Surreply to Conoco's Reply in Support of Its Motion for Summary Judgment on the Same as Fed Issues (Doc. No. 619). The motion for leave to file surreply is hereby **granted** and the attached surreply has been considered by the Court. The Court, having considered the motions for summary judgment, the briefs and relevant case law, concludes that the motions (Docket Nos. 422 and 424) shall be **granted.**

**I. Introduction**

Plaintiff Elliott Industries Limited Partnership filed the Second Amended Complaint ("SAC") "for itself and as representative of the Class of Plaintiffs" (collectively referred to as "Elliott" throughout this and all subsequent opinions).

As will be discussed in this and in subsequent opinions filed in this case, Elliott makes claims under various theories, none of which is a breach of contract theory. Specifically, the SAC alleges that Defendants have excessively charged Elliott for gas processing and marketing. According to the SAC, Defendants take out substantial volumes of natural gas liquids ("NGLs") from the natural gas they deliver to the Plant, transferring these volumes to Defendants' own accounts (SAC ¶ 34). Elliott claims that some of the transferred NGLs are allegedly attributable to its royalty interests, and thus represent a "fee" for the processing services. Thus, according to Elliott, the value of royalty payments received is reduced by the volume and value of the NGLs retained by Defendants for themselves. The SAC alleges that this charge of substantial fees has been without disclosure to Elliott and without an

---

[2] In connection with these documents, the Court has considered Defendants' Statement of Facts (Docket No. 427), filed in response to Plaintiffs' Statement of Undisputed Material Facts contained in Docket No. 382, as well as Plaintiffs' response to this statement of facts (Docket No. 525).

agreement to deduct these fees. Elliott alleges that these processing fees exceed Defendants' actual costs for processing, that they exceed the reasonable value of such services, and that Elliott is entitled to damages in an amount sufficient to disgorge from Defendants all benefits retained by them as a consequence of their misconduct.

Defendants are operators of a number of leases and wells in which they own working interests. Defendants contend that their working interests are subject to royalties and overriding royalties that are created and controlled by contracts.

All of Conoco's contracts and nearly all of Amoco's contracts with Elliott are governed by royalty instruments that require Defendants to remit royalty by one of two methods: either in the "same manner as royalty is payable to the United States" or on the "market value of the gas at the wells as produced"[3] (Hindin-King Aff. ¶¶ 3-4; Bradley Aff. ¶ 3).[4]

The documents under which the Class Representative, Elliott Industries, claims entitlement to royalty payments from Amoco are attached to Attachment A[5] to Defendants' Statement of Facts (Docket No. 427). These documents contain examples of the type of language that obligates Defendants to remit royalty under two methodologies.

These contracts contain express language governing Defendants' royalty payment obligation. These documents do not entitle Elliott to a pro rata share of natural gas liquids or other refined natural

---

[3] This method of payment is one whereby the royalty is paid for the value of the gas at the well: that is, after the lessee fulfills its contractual obligation to produce gas at the surface, but before the lessee adds to the value of this gas by processing or transporting it. *See Creson v. Amoco Prod. Co.*, 129 N.M. 529 (Ct. App. 2000).

[4] Defendants rely heavily upon these two affidavits, both of which are attached to Defendants' Statement of Facts (Docket No. 427).

[5] Attachment A is the Affidavit of Debra Hindin-King.

3

gas products (Hindin-King Aff., ¶¶ 3, 4; Bradley Aff., ¶ 3).

Defendants account and have accounted on a monthly basis to the owners of royalties and overriding royalty interests for their pro rata share of the value of the natural gas and natural gas liquids produced and sold from the relevant properties. Plaintiffs do not dispute that Defendants have accounted to royalty owners based on the contracts creating each interest; rather, they contend that their payments should be more, because improper "fees" have been deducted before payment to them.

## II. Summary Judgment Standards[6]

A summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). On review, the party opposing summary judgment benefits from all reasonable doubts in determining whether a genuine material factual issue exists. *Id.* at 321-323.

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327. Rule 56 of the Federal Rules of Civil Procedure provides that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *Id*. at 321-323.

---

[6] Although these standards are delineated only in this, the first of five memorandum opinions and orders that evaluate the summary judgment motions of the parties, they have been applied in all five of these Court rulings.

> [T]he burden on the moving party may be discharged by "showing" – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325.

Upon such a showing,

> [the] adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but *the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e)(emphasis supplied).

Although the parties may dispute many subsidiary factual issues, once a movant has identified an element of a claim that the nonmovant cannot prove, all other factual disputes concerning that claim become immaterial, and the court may properly enter summary judgment. *See Celotex Corp.*, 477 U.S. at 322-23. The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to it, however, that material must contain probative evidence that would allow a trier of fact to find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

### III.  Defendants' Joint Motion for Summary Judgment on "At the Well" Royalty Obligations (Doc. No. 422)

In this motion, Defendants seek a ruling that the royalty instruments, that require royalty payments on the value of the gas "at the well," are clear and unambiguous and must be interpreted to mean that Elliott is entitled to royalties based on the value of unprocessed gas as it emerges at the wellhead.

In response, Elliott argues that in fact Defendants have not paid royalties based on the value

5

of raw, unprocessed gas at the wellhead, but rather on the basis of the value of natural gas liquids ("NGLs") extracted from unprocessed gas at the processing plant, and that Defendants should be estopped from asserting otherwise. Secondly, Elliott argues that the language "market value of the gas at the wells as produced," would not permit Defendants to pay royalties on the value of the unprocessed gas at the wellhead under the *Creson* case.[7]

In New Mexico, the royalty payment obligation is governed by the language of the instrument creating that right. *Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1229-30 (10th Cir. 1996); *Leonard v. Barnes*, 75 N.M. 331, 345 (1965)("[a]n oil and gas lease is merely a contract between the parties and is to be tested by the same rules as any other contract"). Elliott does not argue that this phrase is ambiguous or that it is not governing.

The meaning of the term "at the well" in a royalty clause was determined in *Creson v. Amoco Prod. Co.*, 129 N.M. 529 (Ct. App. 2000). In that case, the Court was presented with the issue as to what royalty amounts should be paid, for production under a carbon dioxide unit agreement. Specifically, the issue was whether unit expenses could be properly deducted from the sales price before calculating the royalties. The unit agreement provided that the royalties paid were to be based on the "net proceeds derived from the sale of Carbon Dioxide Gas at the well . . . ." Defendants calculated this according to the "work back method" approved in *N. Nat. Gas Co. v. Grounds*, 666 F.2d 1279 (10th Cir. 1981).

To address this issue, *Creson* conducted an extensive review of oil and gas law from Texas and other states. It compared the language of the unit agreement with leases and royalty agreements

---

[7] I note that Elliott's response is primarily premised on the factually unsupported arguments of counsel. Such factually unsupported arguments may not be considered in the Court's consideration of the standard required to defeat summary judgment. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 102-25 (10th Cir. 1992).

6

with similar language, concluding that the contracts between the parties controlled, applying the law relating to oil and gas leases and royalty agreements. *Creson* held that the language of the unit agreement required the royalty owners to share in the costs of processing and transportation, necessarily incurred after the gas left the wellhead, in the ratio established by the agreements between the parties. This is the rule consistently applied in oil and gas producing states.

>Specifically, *Creson* construed the term "at the well" as follows:

>>The royalty compensates the lessor [or royalty owner] for the value of the gas at the well: that is, the value of the gas after the lessee fulfills its obligation under the lease to produce the gas at the surface, but before the lessee adds to the value of this gas by processing or transporting it.

*Creson*, 129 N.M. at 534.

In construing agreements whereby royalties are paid "at the wellhead", *Creson* held that royalty owners simply have no right to "reap the benefits of an enhanced value of the gas sold downstream." *Id*. at 536. The purpose of an "at the well" royalty payment provision is to distinguish between gas sold in the form in which it emerges from the well, as opposed to gas to which value is added by transportation away from the wellhead or by processing the gas after it is produced. Thus, the phrase "at the well" means not only the place of valuation, but also the condition of the gas when valued or sold. Royalty is to be paid on the value of the gas in its unprocessed state as it comes to the surface at the mouth of the well before it is transported and processed.

The Court has considered Elliott's estoppel arguments and finds them unavailing. The netback process of royalty payment, employed herein by Defendants, was approved in *Creson*:

>>The question posed by Article 6.3 [containing the royalty clause in the Unit Agreement] is whether, when the sale of the gas occurs at a place other than the

7

>wellhead, Defendants could make post-wellhead costs adjustments in valuing the "net proceeds . . . at the well.
>
>\*\*\*
>
>We determine, as did the trial court, that this clause is unambiguous and means that Plaintiffs are entitled to royalties based on the value of the carbon dioxide gas as it emerges at the wellhead.

*Creson*, 129 N.M. at 533.

There is no basis to support Elliott's contention that it is entitled to royalty on a value of the gas downstream of the well, thereby making any cost adjustment to a downstream price a "charge" or "deduction" from "their royalty." If Elliott were contractually entitled to royalty based on the downstream price or value, such an argument would be tenable, but obviously that is not the case here.

The relevant inquiry here is not whether Defendants' processing adjustments were "actually incurred and reasonable," but whether the adjustments result in royalty payments consistent with the value of the gas "as it emerges at the wellhead."

As noted above, Defendants' royalty payment obligation is governed by the language of the instrument creating that right. Consistent with the reasoning in *Creson*, I conclude that under the "at the well" clause in this case, royalties are owed on the value of the gas "as it emerges at the wellhead." *Id*. Under New Mexico law, the royalty obligation under "at the well" instruments is clear and unambiguous. For all of the reasons stated above, Defendants' Joint Motion for Summary Judgment on "At the Well" Royalty Obligations (Docket No. 422) shall be **granted**.

## IV. Conoco's Motion for Summary Judgment on the "Same as Fed" Royalty Obligation and Compliance Therewith (Docket No. 424)[8]

In this motion, Conoco asks the Court to rule as to the nature and extent of its contractual duty with regard to its "same as fed" royalty obligations, and on its compliance with that duty as a matter of law. Specifically, Conoco contends that its obligation is unambiguous, and that it has paid Elliott and all members of the class possessing such a contract, "in the same manner" as it has paid royalty to the United States Government (Defs.' Stmnt. of Facts ¶¶ C, G, H).

The royalty payment that is due "in the same manner" as Defendants remit royalty to the "United States" is referred to as "same as feds" or Mineral Management Services ("MMS") methodology. Royalties payable to the United States are governed by published federal regulations.

Conoco relies upon the testimony of Danny Frizzell and that of Curtis Bradley to support its position that, for the Elliott "same as fed" properties, it has made royalty payments in the same manner as it pays the federal government. Specifically, Conoco has submitted deposition testimony and the affidavit of Curtis Bradley, a long-term Conoco employee. The affidavit states that it was written in response to that of Stephen Elliott. In his affidavit, Bradley testified that Conoco is paying royalties to Elliott in the same manner that Conoco paid the federal government for Elliott's "same as fed" properties (Bradley Aff. ¶ 7). He also testified as to retroactive payment adjustments that Conoco made from 1991 to 1996 (*Id*. ¶¶ 9-10). Bradley testified that Conoco's system is set up to make "same as fed" payments. Conoco contends that Elliott has no evidence to rebut this evidence and the Court agrees.

---

[8] The Court has before it Class's Motion for Leave to File Surreply to Conoco's Reply in Support of Its Motion for Summary Judgment on the Same as Fed Issues (Docket No. 619). The Court has granted this motion, and considered the contents of the proffered Surreply Brief attached to this motion.

Elliott's response to this motion is based on an affidavit of Stephen Elliott. This affidavit contains approximately nine pages that discuss Elliott's records on the issue of retroactive adjustments made by Conoco for royalties paid in the "same as fed" category (Elliott Aff. pp. 2-11). I agree with Conoco's argument that Elliott does not identify the properties to which he refers, making it impossible for Conoco or for this Court to address or evaluate his assertions. Furthermore, this affidavit contains conclusory statements that are insufficient as a matter of law to defeat Conoco's motion for summary judgment. *See BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.,* 194 F.3d 1089, 1101-02 (10th Cir. 1999)(affidavit that does not contain specific information regarding specific transaction is insufficient to establish an issue of fact; "the affidavit must set forth facts, not conclusory statements").

For these reasons, Conoco's Motion for Summary Judgment on the "Same as Fed" Royalty Obligation and Compliance Therewith (Docket No. 424) shall be **granted**.

In conclusion, Defendants' payment obligations are governed by the terms "on the market value of the gas at the wells as produced," or "in the same manner as royalty is payable to the United States," as these terms are contained in the agreements between the parties, and as these terms have been construed and approved by New Mexico courts. Elliott has not presented a factual basis on which a jury could find that Defendants have not paid properly in accordance with these provisions.

**WHEREFORE,** for these reasons, the Court, having considered the motions, briefs and relevant case law, concludes that Defendants' motions (Docket Nos. 422 and 424) shall be **granted.**

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**