IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELLIOTT INDUSTRIES LIMITED
PARTNERSHIP**, **a New Mexico limited
partnership, on behalf of itself and all
others similarly situated,**

                **Plaintiffs,**

**v.**                                        **CIV No. 00-655 LH/WDS  ACE**

**CONOCO, INC**., **a Delaware corporation,
BP AMERICA PRODUCTION COMPANY,
a Delaware corporation, and, BP ENERGY
COMPANY, a Delaware corporation,**

                **Defendants.**

## MEMORANDUM OPINION AND ORDER #2

**THIS MATTER** comes before the Court for consideration of  Plaintiff Class' [sic] Motion

for Partial Summary Judgment as to Third and Fourth Claims for Relief (Docket No. 381); and

Defendants' Joint Motion No. 11 for Partial Summary Judgment as to Plaintiffs' Fourth Claim for

Relief (Docket No. 465).[1]  The Court, having considered the motions, briefs and relevant case law,

concludes that Plaintiffs' motion (Docket No. 381) shall be **denied**, that Defendants' motion (Docket

---

[1]  In addition to these documents, the Court has considered Defendants'  Statement of Facts (Docket No.
427), filed in response to Plaintiffs'  Statement of Undisputed Material Facts contained in Docket No. 382, as well as
Plaintiffs' response to this statement of facts (Docket No. 525).

No. 465) shall be **granted**, and that Count IV of the Second Amended Complaint ("SAC") shall be **dismissed**.

## I.  Discussion[2]

According to Count III of the Second Amended Complaint, Elliott and the Class (collectively referred to as "Elliott" throughout this and all subsequent opinions) have "certain legal relationships with Defendants, which impose upon the Defendants a duty of good faith and fair dealing toward" Plaintiffs (SAC ¶ 45).  The SAC alleges that Defendants have breached this duty by charging Elliott with fees for gas processing and marketing services at the Plant, which substantially exceed Defendants' actual costs to provide such services, and the reasonable value of the services (*Id*. ¶ 46).  Elliott alleges that the breach of this duty is willful and intentional, entitling Plaintiffs to punitive damages (*Id*. ¶ 48).

Count IV alleges breach of a "duty to market."  Specifically, it states that Defendants have undertaken marketing obligations for gas and natural gas liquids ("NGLs") produced from the subject property, knowing that a portion of the value received is attributable to the interests of Elliott (SAC ¶ 50).  The SAC states that Defendants have breached their "duty to market" by failing to act with due regard for the rights and interests of Elliott (*Id*. ¶ 52).  It alleges that Defendants were motivated by self-interests and charged Plaintiffs excessive and unreasonable fees for processing and marketing their gas and NGLs, such fees in excess of their actual costs (*Id*.).  The SAC states that Defendants

---

[2] Memorandum Opinion and Order #1, filed simultaneously with this one, contains background information about this lawsuit in the introduction section.  Rather than reiterate this information in this opinion, the Court incorporates it by reference.

breached this duty by failing to pay Plaintiffs the best possible price, and by failing to fully disclose all matters relating to marketing of the gas and NGLs (*Id.*). Elliott alleges that the breach of this duty is willful and intentional, justifying punitive damages (*Id.* ¶ 54).

In the motion (Docket No. 381), Elliott states that Defendants charged a 39% processing fee, thereby reducing royalty payments accordingly. Plaintiffs indicate that they seek a ruling that, to the extent Defendants are able to charge any processing costs at all, they cannot charge more than their actually incurred and reasonable costs. In support of such a ruling, Plaintiffs rely on the implied covenant of good faith and fair dealing and the implied duty to market.

As concluded by Memorandum Opinion and Order #1, filed simultaneously with this opinion, it is undisputed that the instruments creating Defendants' payment obligations to the Plaintiffs require payment either "on the market value of the gas at the wells as produced," or "in the same manner as royalty is payable to the United States." These methods have been approved by New Mexico courts and by this Court. Given the contractual language between the parties, the claims for implied covenants must be dismissed, as explained below.


## A.  Implied Covenant of Good Faith and Fair Dealing

Both royalty owners and overriding royalty owners enjoy the protection of this implied covenant, which may be applied against lessees and working interests owners. *Cont'l Potash v. Freeport-McMoran*, 115 N.M. 690, 706 (1993). This implied covenant however requires only "that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 438 (1994); *Dairyland Ins. Co. v. Herman*, 124 N.M. 624, 628-29 (1997). It does not impose affirmative duties upon one party to

3

protect another.  *Cont'l Potash, Inc.*, 115 N.M. at 706.  Furthermore, Defendants are not obligated to act to their economic detriment for the benefit of the  Plaintiffs.  *See Murdock v. Pure-Lively Energy 1981-A, Ltd.*, 108 N.M. 575, 579 (1989)(covenants of good faith, unlike fiduciary duties, do not require exclusive operator to subordinate its interest to that of royalty holders).

This covenant is the subject of a recent New Mexico case,  *Azar v. Prudential Ins. Co. of America*, 133 N.M. 669 (Ct. App. 2003).  Quoting *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 731 (1988), *Azar* noted that it is inappropriate "to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated written contract."  *Azar*, 133 N.M. at 684. *Azar* confirmed that the *Melnick* rule is not limited to employment contracts, but extends to other types of contracts.  *Id.*, citing *Cont'l Potash, Inc.*, 115 N.M. at 704.

The *Continental Potash* case noted that implied covenants are not favored in law, especially when a written agreement between the parties is apparently complete.  *Cont'l Potash, Inc.*, 115 N.M. at 704 (citing *Stern v. Dunlap Co.*, 228 F.2d 939, 942 (10th Cir. 1955)).[3]  The *Continental Potash* case stated the general rule that "an implied covenant cannot co-exist with express covenants that specifically cover the same subject matter."  *Cont'l Potash, Inc.*, 115 N.M. at 704, (citing *Kingsley v. W. Natural Gas Co.,*  393 S.W.2d 345, 350-51 (Tex.Civ.App. 1965)).  *See also Cafeteria Operators, L.P. v. Coronado-Santa Fe Assocs.,* 124 N.M. 440 (Ct. App. 1998)(refusing to apply implied covenant of good faith and fair dealing to set aside express provisions in lease agreement).

---

[3]  The Court acknowledges that the general rule against implied covenants co-existing with express covenants that specifically cover the same subject matter is not without exception.  The *Continental Potash* case noted that in instances where consideration of relevant parts of the contract, along with the facts and circumstances surrounding the execution of the agreement, make it clear that an obligation is within the contemplation or intentions of the parties, then such an obligation may be implied and enforced.  *Cont'l Potash, Inc.*, 115 N.M. at 704.  There are no facts before the Court to support such an exception to the general rule.

4

Elliott seeks two rulings: (1) that this covenant applies to Defendants; and (2) that under this covenant, Defendants cannot charge more than their actually-incurred and reasonable processing costs (Pltfs' Mem. p. 14).

As discussed in Memorandum Opinion and Order #1, it is undisputed that Defendants paid their royalty obligations pursuant to two methodologies that have been approved by New Mexico courts, the two methodologies that are set forth in the royalty instruments, *i.e.*, payment based upon "market value at the well" and "in the same manner as is to be paid to the federal government." Given the undisputed facts before me, I cannot conclude that Defendants violated the covenant of good faith and fair dealing by paying in these ways. It is not the function of this Court to re-write the contracts of the parties, but rather to give effect to the intent of the parties. When contracts between the parties speak to the payment obligation, New Mexico courts will not revise that obligation with implied duties. *Cont'l Potash, Inc.*, 115 N.M. at 704. It would be incongruous to hold that Defendants acted in bad faith, while acting in accordance with an express contractual provision, *Id*. at 707, and while acting in conformity with contractual provisions that have been approved by New Mexico courts. Furthermore, as noted in the *Creson* case, any accounting adjustments necessary to arrive at the royalty bearing value dictated in the instruments do not represent a "charge" or "fee" to royalty. *Creson v. Amoco Prod. Co.,*, 129 N.M. 529, 535 (Ct. App. 2000).

### B. Implied Duty to Market

Count IV of the SAC alleges that Defendants have an "implied duty" to (a) "achieve the best price" for the residue gas and natural gas liquids ("NGLs") derived from the natural gas produced from the wells in which Plaintiffs own an interest, and (b) "to pay the Plaintiff and Plaintiff Class the

5

actual price or true value received by the Defendants for the gas and NGLs" (SAC ¶ 51).  Plaintiffs assert that this obligation to pay royalty on the "actual price or true value received by Defendants for the gas and NGLs" arises out of the "implied duty to market" (*Id*.).

The parties extensively argue as to whether or not, under New Mexico law, overriding royalty interests have a claim based on an "implied duty to market," against working interest owners.  It is unnecessary for the Court to reach this issue however, because the same rationale applies to an implied duty to market, as has been applied by this Court to the implied duty of good faith and fair dealing.  The Court is again bound by the principle that it is not this Court's function to rewrite a contract by implying covenants between parties when an express written agreement exists.  *See Cont'l Potash, Inc.*, 115 N.M. at 707.  An implied covenant cannot co-exist with express covenants that specifically cover the same subject matter.  *Id*. at 704.  This principle applies to regular royalty interest as well as to overriding royalty interests.

**WHEREFORE,** for these reasons, Plaintiffs' motion shall be denied and Defendants' motion shall be granted, resulting only in dismissal of the claim for implied breach of a duty to market, Count IV of the Second Amended Complaint.

**IT IS SO ORDERED.**

_____

**SENIOR UNITED STATES DISTRICT JUDGE**