IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**ELLIOTT INDUSTRIES LIMITED
PARTNERSHIP**, a New Mexico limited
partnership, on behalf of itself and all
others similarly situated,

                 **Plaintiffs,**

v.                                                         CIV No. 00-655 LH/WDS  ACE

**CONOCO, INC**., a Delaware corporation,
**BP AMERICA PRODUCTION COMPANY**,
a Delaware corporation, and, **BP ENERGY
COMPANY**, a Delaware corporation,

                 **Defendants.**


## MEMORANDUM OPINION AND ORDER #3

**THIS MATTER** comes before the Court for consideration of Plaintiff Class's Motion for Partial Summary Judgment as to the Duty to Disclose Under Sixth and Seventh Claims for Relief (Docket No. 417), Defendants' Joint Motion No. 3 for Partial Summary Judgment on Fraud and Constructive Fraud Claims (Docket No. 472), Defendants' Joint Motion No. 5 for Partial Summary Judgment on Conversion Claim (Docket No. 476), and Defendants' Joint Motion No. 2 for Partial Summary Judgment on Tort Claim (Docket No. 470). Counts VI and VII in the Second Amended Complaint ("SAC") contain claims for constructive fraud and fraud and Count V contains a claim for conversion. The Court, having considered the motions, briefs and relevant case law, concludes

1

that Plaintiffs' motion shall be **denied**, that Defendants' motions shall be **granted**, and that Counts V, VI and VII of the Second Amended Complaint shall be **dismissed**.

## I.  Counts VI and VII[1] –  Constructive Fraud and Fraud

Count VI of the SAC is entitled "Constructive Fraud," and generally alleges that Defendants omitted, concealed, misrepresented and failed to disclose charges and underpayments to Elliott (SAC ¶ 61). The SAC alleges that this constructive fraud is and has been willful and intentional, and that Plaintiffs are therefore entitled to an award of punitive damages (*Id.* ¶ 63).

Count VII of the SAC is entitled "Fraud". It alleges that Defendants' acts and omissions in charging Plaintiffs excessive amounts for gas processing and marketing services, and their failure to pay Plaintiffs the amounts to which they are legally entitled, by concealing, omitting, misrepresenting and failing to disclose such facts constitute misrepresentation of material facts (*Id.* ¶ 65). The SAC alleges that Defendants' misrepresentations were made with the intent to deceive them or to induce or cause them to surrender valuable property rights, to their detriment (*Id.* ¶ 67). It alleges that Defendants' fraudulent acts, omissions and concealments were willful and intentional, and that Plaintiffs are therefore entitled to an award of punitive damages (*Id.* ¶ 69). There is obviously significant overlap in the allegations of these two counts.

---

[1] Memorandum Opinion and Order #1, filed simultaneously with this one, contains background information about this lawsuit in the introduction section. Rather than reiterate this information in this opinion, the Court incorporates it by reference.

**A. Constructive Fraud**

Generally speaking, constructive fraud is a breach of a legal or equitable duty that the law declares fraudulent because of its tendency to deceive others. *Barber's Super Markets, Inc.*, 84 N.M. 181, 186 (Ct. App. 1972). Plaintiffs' motion is premised on the assertion that Defendants breached their duty to disclose a 39% processing fee in their royalty statements. Plaintiffs' argument as to the existence of a duty to disclose is primarily based on the case of *Everett v. Gilliland*, 47 N.M. 269, 277 (1943), and the principle that if one undertakes to speak and provide information in a commercial transaction "he is bound to speak truly without suppression of known material facts." Plaintiffs argue that because the royalty statements sent by Defendants gave the appearance of being "whole" but were in fact incomplete, insofar as material facts were concerned, that the statements constitute fraudulent concealment and violate a duty to disclose material facts. Plaintiffs seek rulings that Defendants had a legal duty to disclose, that they did not disclose the 39% processing fee in their royalty statements, and that they breached their duty by failing to disclose said processing fee.[2] Their entire argument in support of this claim is premised on the existence of a legal duty to disclose. The Court notes that a party may only be held liable for nondisclosure when there was a duty to disclose. *R.A. Peck, Inc. v. Liberty Federal Savings Bank*, 108 N.M. 84, 88 (Ct. App. 1988).

The Court is persuaded by Defendants' argument that no such duty exists under the facts of this case. Specifically, the contractual relationships of the parties in this case do not give rise to the imposition of such a duty. A relationship existing between the parties that would give rise to such a duty generally falls into three distinct classes: (1) where there is a fiduciary relation; (2) where it

---

[2] *See* Pltf. Cl. Mem. in Supp. of Mot. for Part. Sum. Judg. at 3 (Docket No. 418).

appears that at least one of the parties to a contract expressly reposes trust and confidence in the other; or, (3) where the contract or transaction is intrinsically fiduciary and calls for perfect good faith (*Id.*).

The *Continental Potash* case examined the relationship between a minerals operator and its royalty owner and concluded that the duties of the operator were defined by contract, that no fiduciary relationship existed, that the operator had no duty to disclose anything, and that no claim of constructive fraud was available to the royalty owner. "Without a fiduciary duty, no duty to disclose or speak existed." *Cont'l Potash v. Freeport-McMoran, Inc.*, 115 N.M. 690, 701 (N.M. 1993).

As noted in Memorandum Opinion and Order #1 and Memorandum Opinion and Order #2, the contracts between the parties in this case contain language governing Defendants' royalty payment obligations. The relationship between the parties is defined by contract. All of Conoco's contracts and nearly all of Amoco's contracts with Plaintiffs are governed by royalty instruments that require Defendants to remit royalty by one of two methods: either in the "same manner as royalty is payable to the United States" or on the "market value of the gas at the wells as produced [3]" (Hindin-King Aff. ¶ ¶ 3,4; Bradley Aff. ¶3). These payment methods were discussed at length and approved in Memorandum Opinion and Order #1.

As in the *Continental Potash* case, a fiduciary relationship does not automatically arise from these contractual duties. *See Continental Potash* at 701. Given the type of agreement at issue here and the legal relationship between the parties, no fiduciary duty exists (*Id.*). Likewise, there is no

---

[3] This method of payment is one whereby the royalty is paid for the value of the gas at the well, that is, after the lessee fulfills its obligation under the lease to produce gas at the surface, but before the lessee adds to the value of this gas by processing or transporting it. *See Creson v. Amoco Production Co.*, 129 N.M. 529 (Ct. App. 2000).

4

proof of a confidential relationship, relationship of trust, or one mandating perfect good faith. Accordingly, consistent with the *R.A. Peck, Inc.* case, no duty to disclose will be imposed for any of these reasons.

The Court is cognizant that a duty to disclose in a fraud case may also arise if there is knowledge that the other party is acting under a mistaken belief, if one has superior knowledge not within the reach of the other party, or if such knowledge could not have been discovered by the exercise of reasonable diligence. *Krupiak v. Payton*, 90 N.M. 252, 253 (1977). There is no indication before the Court of any such knowledge in this case. Furthermore, there is no evidence of "acts contrary to public policy, to sound morals, or to provisions of a statute" to justify a finding of constructive fraud. *See Wolf & Klar Cos. v. Garner*, 101 N.M. 116, 118 (1984).

For all of these reasons, the claim for constructive fraud, brought in Count VI shall be dismissed.

### B. Fraud

A successful fraud claim must prove a misrepresentation of fact, known by the maker to be untrue, made with the intent to deceive and to induce the other party to act upon it, and upon which the other party relies to his detriment. *See Poorbaugh v. Mullen*, 96 N.M. 598, 601 (Ct. App. 1981).

Defendants argue that Plaintiffs have no evidence of any false statement made to them by Defendants. Plaintiffs respond that Defendants engaged in misrepresentation by omission in their royalty statements.

The Court notes that Amoco pays royalties at the wellhead pursuant to the agreements, in methods consistent with New Mexico law, that have been approved by Memorandum Opinion and

Order #1, and that therefore none of the post-production costs are reflected on the check stub (Defs'. Consol. Stmnt. of Facts Re: Fraud Issues ¶ S, Docket No. 488). Similarly, Conoco pays royalties pursuant to the "same as fed" method that has been approved by this Court in Memorandum Opinion and Order #1.

Plaintiffs' "misrepresentation by omission" arguments are simply a different way to argue the constructive fraud via failure to disclose claim, which has already been dismissed above. Consequently, to the extent that Count VII relies on nondisclosures, it must be dismissed, due to the Court's finding above that Defendants owed Plaintiffs no duty to disclose. *R.A. Peck*, 108 N.M. at 88 (a party can only be held liable for nondisclosure when there was a duty to disclose).

In addition to allegations of nondisclosures, the SAC also alleges that Defendants made misrepresentations, that Defendants knew or should have known were false (SAC ¶ 66); that the representations were made by Defendants with an intent to deceive Plaintiffs and to induce them to surrender valuable property rights (*Id*. ¶ 67); and that Plaintiffs have suffered substantial injuries (*Id*. ¶ 68).

In response to these types of allegations, Defendants argue an absence of proof of the element of detrimental reliance, necessary to a fraud claim. Defendants argue that Elliott's statement that the only thing he did "in reliance" of the check detail was to file this lawsuit later than he would have otherwise done. (See Defs.' Cons. Stmnt. of Facts Re: Fraud Issues ¶ W, Docket No. 488)(Elliott Depo. at 140-141). Defendants correctly contend that this is deficient to establish reliance as a matter of law, citing *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000)(delay in filing suit does not establish detrimental reliance).

Relying on the same page of Elliott's deposition, Plaintiffs counter that Elliott also testified

6

that he accepted underpayments as a result of Defendants' fraud, in his belief that the royalty statements fully disclosed all lawful deductions. They cite Missouri and Kentucky cases in support of the argument that this is a sufficient injury to meet the injury element of actionable fraud.[4] They argue that the acceptance of these underpayments establishes both reliance and injury.

The basis for plaintiffs' claims in these two cases involved the deduction of taxes from gross sales realization in the calculation and payment of royalties. These cases are distinguishable from the one before the Court, because the deduction of taxes was not done pursuant to any methodology provided by the contracts between the parties, as occurred in this case. Here, Plaintiffs are unable to argue that they accepted payments in reliance upon representations that intentionally understated the amount due. Rather, as detailed in Memorandum Opinion and Order #1, Plaintiffs do not dispute that Defendants paid royalties in accordance with the language of the contracts between the parties. In the context of these contracts, acceptance of what Plaintiffs term as "underpayments" does not constitute detrimental reliance, as an element of fraud. Any belief that Plaintiffs may have had that the royalty statements would affirmatively spell out lawful deductions could not be based upon a reading of this contractual language, nor is there any evidence that Defendants made any representations, fraudulent or otherwise, outside of this contractual language.

Accordingly, Plaintiffs have failed to raise a genuine issue of material fact for trial on either their claim for "misrepresentation by omission" or their claim for fraud by affirmative representation. The claim for fraud, brought in Count VII shall be dismissed.

---

[4] *See Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 66-67 (Mo. App. 1999) and *John Hopkins Hosp. v. Peabody Coal Co.*, 920 F.Supp. 738, 742 (W.D.Ky. 1996).

**II. Count V – Conversion**

Count V essentially claims that Defendants have intentionally and wrongfully denied Elliott property rights over its property in the form of royalties and overriding royalties, by wrongfully converting and exercising dominion and control over such property (SAC ¶ 57).

In New Mexico, conversion requires the "unlawful exercise of dominion and control over property belonging to another in defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Sec. Pac. Fin. Serv. v. Signfilled Corp*., 125 N.M. 38, 43 (Ct. App. 1998).  Notably, although conversion is often a question for a jury to decide, where "reasonable minds cannot differ, the question is one of law to be decided by the judge" and summary judgment may be proper. *Gelder v. Puritan Ins. Co*.,  100 N.M. 240, 241 (Ct. App. 1983).

The Court focuses on the first element of this tort, i.e., whether there are facts that would support a jury finding of an "unlawful exercise of dominion and control over the property belonging to [Elliott] in defiance of the owner's rights" by Defendants.  As noted in Memorandum Opinion and Order #1, Elliott does not dispute that Defendants paid royalties according to the royalty contracts, nor does Elliott contend that the "same as fed" and "at the wellhead" provisions have been breached Rather, Elliot contends that such payments should be more, because improper "fees" have been deducted before payment to Plaintiffs (*Id*. at 3-4).  In this prior opinion, the Court concluded that Defendants' payments to Plaintiffs, pursuant to these two methodologies, were consistent with New Mexico law  (*Id*. at 9).  There are no facts on which the Court could conclude that Defendants unlawfully exercised dominion and control over Plaintiffs' royalty rights, in defiance of those rights. Likewise, there are no facts on which the Court could base a conclusion that Defendants' acts

8

constituted an unauthorized and injurious use of Elliott's property. Even if Defendants failed to pay royalties according to a proper measure, this would culminate in a breach of contract claim, but not one for conversion. *See Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225, 242 (5th Cir. 1984). Underpayment raises issues quite different from conversion, and a claim for conversion is inappropriate to recover damages under contract.

For these reasons, Defendants' motion shall be granted and the claim for conversion, Count V, shall be dismissed.

### III.  Defendants' Motion for Summary Judgment on Tort Claim (Docket No. 470)

This motion seeks dismissal of Elliott's claims for constructive fraud, fraud and conversion. Defendants' argument is that these claims must fail because they merely allege breaches of duties created, imposed and governed by contracts, and therefore there exist no actions sounding in tort. Notably, Elliott has not filed a claim for breach of contract.

The Court has herein concluded that these three torts, alleged by Elliott, cannot withstand summary judgment, and must be dismissed. The Court has also considered this motion and its assertion that a failure to pay royalty in the context of this case can be a breach of no duty other than one created by contract. The Court's adoption of the reasoning in Defendants' motion provides an additional basis for dismissal of the claims of constructive fraud, fraud and conversion.

The Tenth Circuit decisions in *Isler v. Texas Oil and Gas Corp.*, 749 F.2d 22 (10th Cir. 1984) and *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197 (10th Cir. 1988) discuss this issue. They distinguish this case from those in which a tort duty arises independently of the contractual duty in the royalty agreements. Where a contract imposes the very duty upon which an independent

9

tort claim is based, and the facts giving rise to the purported tort are the same facts alleged in support of a breach of contract claim, the tort claim cannot stand. *See Isler*, 749 F.2d at 24.[5]

As discussed above in this opinion, like the plaintiff's negligence claim in *Isler*, the tort claims in this case are really premised upon duties imposed by contracts between the parties in this case. The fraud and constructive fraud claims allege a failure to pay Plaintiffs the amounts to which they are legally entitled, by concealing, omitting, misrepresenting, and failing to disclose certain facts. The conversion claim is that Plaintiffs have been denied their property rights in the form of royalty payments. As noted herein and in Memorandum Opinion and Order #1 and Memorandum Opinion and Order #2, the contracts between the parties contain language governing Defendants' royalty payment obligations.

The written agreements govern Defendants' royalty obligations, and Elliott's claim for failure to fulfill that obligation is properly raised in the context of a breach of contract.

**WHEREFORE,** for these reasons, Plaintiffs' motion shall be denied and Defendants' motions shall be granted, resulting in dismissal of the claims of constructive fraud, fraud and conversion, Counts V-VII of the Second Amended Complaint.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[5] In *Isler*, the Court reversed a jury's verdict on a negligence claim even though the jury found that there was no breach of contract. *See Isler*, 749 F.2d at 22-24. Accordingly, Plaintiffs' failure to sue for breach of contract in this case does not change this analysis.