IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**ELLIOTT INDUSTRIES LIMITED
PARTNERSHIP**, a New Mexico limited
partnership, on behalf of itself and all
others similarly situated,

        **Plaintiffs,**

v.                                                            CIV No. 00-655 LH/WDS  ACE

**CONOCO, INC**., **a Delaware corporation,
BP AMERICA PRODUCTION COMPANY,
a Delaware corporation, and, BP ENERGY
COMPANY, a Delaware corporation,**

        **Defendants.**


## MEMORANDUM OPINION AND ORDER #4

**THIS MATTER** comes before the Court for consideration of Defendants' Joint Motion for Partial Summary Judgment on Statutory Claims (Docket No. 274); The Class's Motion for Summary Judgment as to Liability on the Second Claim for Relief Against Defendant Amoco Production Company (Docket No. 461); and Defendants' Joint Motion No. 7 for Partial Summary Judgment on Plaintiff's Punitive Damages and Unfair Practices Act Claims (Docket No. 480). The Court notes that the first of these motions was ruled on by the Honorable John E. Conway, prior to his transfer of this case to the undersigned judge (*See* Docket No. 405). Pursuant to its continuing jurisdiction over its interim orders, the Court has reconsidered this prior memorandum opinion and order, which is hereby **vacated**. The Court, having considered the motions, briefs and relevant case law, concludes that

1

Defendant's motions shall be **granted**, and that Counts I and II of the Second Amended Complaint ("SAC") shall be **dismissed**.

**I.  Count I  --  Unfair Practices Act**

Count I is entitled "Violation of New Mexico Unfair Practices Act" ("UPA" or "the Act").[1] It alleges various unfair, deceptive and unconscionable trade practices by Defendants in connection with their charging Plaintiffs for gas processing and marketing services provided by Defendants or their affiliates.  As in other counts of the SAC, the gravamen of this count focuses on the transfer of volumes of natural gas liquids ("NGLs") by Defendants from the natural gas delivered to the Plant; transferring these volumes to Defendants' own accounts; and allegations that this transfer represents a "fee" for processing services that have neither been agreed upon by, nor disclosed to, Plaintiffs.[2] Specifically, Plaintiffs contend that the imposition of concealment of a 39% in kind fee for gas processing services is a violation of the UPA and results in liability for treble damages.  Plaintiffs' claim that this Act was violated is twofold:  by Defendants' unfair charge of Plaintiffs for gas processing and marketing at a rate grossly disparate between the value of the services received and the price charged for such services; and (2) by Defendants' false or deceptive statements or lack of disclosure about the extent and prices of such services (SAC ¶ 34).

The UPA defines the terms "unfair or deceptive trade practice" and "unconscionable trade practice" as those occurring, in pertinent part, in the context of the "sale, lease, rental or loan of goods

---

[1]  N.M. STAT. ANN. §§ 57-12-1, *et seq.*

[2]  Memorandum Opinion and Order #1, filed simultaneously with this one, contains background information about this lawsuit in the introduction  section.  Rather than reiterate this information in this opinion, the Court incorporates it by reference.

or services." *See* § 57-12-2 D and E.  Paragraph (D) requires a false or misleading oral or written statement, visual description of other representation of any kind.  Paragraph (E) covers acts or practices.  Plainly, to state a claim for relief under the UPA, one must demonstrate that a sale, lease, rental or loan of goods or services has occurred.  As a matter of law, I conclude that Plaintiffs cannot make this threshold showing.

One of Defendants' arguments is that Plaintiffs' claims fail under the UPA because there are no goods or services at issue here and that royalty owners are neither sellers nor purchasers of royalty gas.  As noted by Judge Conway's July 1, 2002 ruling, Plaintiffs make a "tenuous at best" counter-argument, that is, that Plaintiffs are suing as involuntary purchasers of gas processing services  (*See* Memorandum Opinion and Order at 5, Docket No. 405).  Contrary to this prior decision, I am not persuaded by Plaintiffs' argument, which "greatly stretches the boundaries of the law" (*Id*.).  Rather, I am persuaded by caselaw cited by Defendants and discussed below, that holds that royalty owners are neither purchasers nor sellers of royalty gas.  This legal conclusion removes this case from the ambit of the UPA, because the language,  "sale, lease, rental or loan of goods or services" is not applicable to this case.

It is essential to consider this issue in the proper context.  A royalty interest is basically a share in the oil and gas that is reserved to the landowner or predecessor-in-interest, where an oil and gas lease permits another to develop the property for oil and gas. *See, e.g., Shinn v. Buxton*, 154 F.2d 629, 632 (10th Cir. 1946); *Duvall v. Stone*, 54 N.M. 27 (N.M. 1949).  As outlined in Memorandum Opinion and Order #1, Plaintiffs' royalty interests were contractually created, whereby Plaintiffs (or their predecessors-in-interest) – the owners of the mineral estate –  granted to Defendants (or their predecessors-in-interest) the right to enter onto land and remove oil and gas.  As consideration,

3

Plaintiffs reserved a share of the oil and gas (*i.e.*, a royalty) in exchange for the rights granted to the Defendants. It is well established that this reservation of production by Plaintiffs is a reservation of real property. *See Duvall*, 54 N.M. at 30, citing *Terry v. Humphreys*, 27 N.M. 564 (N.M. 1922). This is not a situation involving the sale or lease of goods and services (*i.e.* personal property), but rather a situation involving an interest in real estate. The UPA does not apply to sales or leases of real estate interests. *See generally McElhannon v. Ford*, 134 N.M. 124, 129 (Ct. App. 2003).

In the most basic terms, Plaintiffs claim that royalties have been underpaid to them by Defendants (SAC ¶ 29). When Defendants tender royalties to Plaintiffs from production recovered on the property, there is no "sale, lease, rental or loan of goods and services" as required by the UPA. Courts have held that royalty owners are *not* involved in the sale of goods and services. *See Mobil Oil Corp. v. FPC*, 463 F.2d 256, 260 (D.C. Cir. 1971)("generally the royalty owner is not considered, either in common parlance or in conceptions of state law decisions to be engaged in any 'sale' of gas."). The case of *Burnet v. Harmel*, 287 U.S. 103, 107 (1931) explained that by virtue of a lease, the lessee acquire the privilege of exploiting the land for the production of oil and gas for a prescribed period. That Court noted that the passing of title of the minerals is "but an incident, rather than a sale of the land or any interest in it or in its mineral content." *Id.* Similarly, the Tenth Circuit has held that a royalty owner is not a purchaser of its royalty gas. *Jicarilla Apache Tribe v. FERC,* 578 F.2d 289, 291 (10th Cir. 1978). As a matter of law, I conclude that Plaintiffs are not sellers nor purchasers of royalties, nor do the facts of this case involve the sale, lease, rental or loan of goods and services as required by the UPA.

As this Court has held in rulings entered simultaneously with this one, the methodologies for payment of royalties have been specified by the contracts between the parties and these

4

methodologies have been approved by New Mexico courts. (*See* Memorandum Opinion and Order #1 and Memorandum Opinion and Order #2.) The Court does not consider the transfer of NGLs to be a "processing fee." As noted in Memorandum Opinion and Order #1, "[t]here is no basis to support Elliott's contention that it is entitled to royalty on a value of the gas downstream of the well, thereby making any cost adjustment to a downstream price a "charge" or "deduction" from "their royalty" (*Id*. at 6). The deduction of post-production costs is provided for in the "at the wellhead" and "same as fed" terms of the agreements. Given this analysis, the Court's July 2, 2002 ruling cannot stand, as it is inconsistent with decisions that have been entered simultaneously with this Memorandum Opinion and Order. Accordingly, the Memorandum Opinion and Order (Docket No. 405) entered on July 1, 2002 is hereby **vacated**.

For the reasons stated herein, Plaintiffs' claim under the UPA, as contained in Count I, shall be **dismissed**.

**II. Count II -- New Mexico Oil and Gas Proceeds Payment Act**[3]

Count II of the SAC alleges that, contrary to this Act, Defendants did not make full payments to Plaintiffs within forty-five (45) days from the time that Defendants received said payments (SAC at ¶ 40). Plaintiffs further allege that under the Act, they are entitled to payment of all unpaid NGLs and interest on these unpaid amounts (*Id*. at ¶ 42). The Court's July 1, 2002 ruling of the Court was that this claim survived summary judgment "due to the lack of statutory interpretation, case law and evidence." (Memorandum Opinion and Order at 9, Docket No. 405).

---

[3] N.M. STAT. ANN. §§ 70-10-1, *et seq*.

In rulings filed simultaneously with this immediate Memorandum Opinion and Order, the Court has decided that Plaintiffs are not entitled to recover any monies allegedly due to Plaintiffs in this case, pursuant to the tort theories contained in the SAC. *See* Memorandum Opinion and Order #3. Additionally, no other theories of potential liability have survived the scrutiny of the Court. Despite the contractual nature of the relationship of the parties, Plaintiffs have not filed a claim for breach of contract. In other words, based on the content of Plaintiffs' pleadings as they stand before the Court, no potential liability of Defendants for "unpaid NGLs", as sought by the SAC, is legally possible.

Count II is premised on a finding by the Court of at least potential liability for an alleged failure of Defendants to make the full payments due to Plaintiffs. Because there will be no such finding, liability under this Act is legally impossible. Accordingly, Count II shall be **dismissed**.

**WHEREFORE**, **IT IS HEREBY ORDERED**, for the foregoing reasons, that the July 1, 2002 Memorandum Opinion and Order (Docket No. 405) is hereby **vacated**;

**IT IS FURTHER ORDERED** that Defendants' motions are granted and Plaintiffs' motion is denied; and,

**IT IS FURTHER ORDERED** that Counts I and II of the Second Amended Complaint shall be **dismissed**.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**